IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF TENNESSEE
COLUMBIA DIVISION

| | |
|---|---|
| JOSHUA M. COVELL, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) NO. 1:23-cv-00026 |
| | ) |
| BUCKY ROWLAND, Sheriff, et al., | ) JUDGE CAMPBELL |
| | ) |
| Defendants. | ) |

## MEMORANDUM OPINION AND ORDER

Joshua Covell, an inmate of the Maury County Jail in Columbia, Tennessee, has filed a Complaint under 42 U.S.C. § 1983 (Doc. No. 1) and an application for leave to proceed in forma pauperis (IFP) (Doc. No. 2).

The case is before the Court for ruling on Plaintiff's IFP application and initial review of the Complaint under the Prison Litigation Reform Act (PLRA), 28 U.S.C. §§ 1915(e)(2) and 1915A.

### I. APPLICATION TO PROCEED IFP

A prisoner bringing a civil action may apply for permission to file suit without prepaying the filing fee required by 28 U.S.C. § 1914(a). Plaintiff's IFP application is incomplete, as it lacks the six-month inmate trust account history required by 28 U.S.C. § 1915(a)(2). However, the Court takes judicial notice that the instant case was filed pursuant to the Court's requirement, in *Covell v. Rowland, et al.*, Case No. 1:23-cv-00001, that Plaintiff cure the misjoinder of claims and parties in that action by filing separate lawsuits, and that Plaintiff had at that time been granted IFP status.

(*See* Case No. 1:23-cv-00001, Doc. No. 10.)[1] The IFP determination in Case No. 1:23-cv-00001, together with Plaintiff's financial affidavit in this case dated less than a month later, demonstrate that he lacks the funds to pay the entire filing fee in advance. Accordingly, Plaintiff's IFP application (Doc. No. 2) is **GRANTED** and a $350 filing fee[2] is **ASSESSED**.

The warden of the facility in which Plaintiff is currently housed, as custodian of his trust account, is **DIRECTED** to submit to the Clerk of Court, as an initial payment, the greater of: (a) 20% of the average monthly deposits to Plaintiff's credit at the jail; or (b) 20% of the average monthly balance to Plaintiff's credit for the six-month period immediately preceding the filing of the Complaint. 28 U.S.C. § 1915(b)(1). Thereafter, the custodian shall submit 20% of Plaintiff's preceding monthly income (or income credited to Plaintiff for the preceding month), but only when the balance in his account exceeds $10. *Id.* § 1915(b)(2). Payments shall continue until the $350 filing fee has been paid in full to the Clerk of Court. *Id.* § 1915(b)(3).

The Clerk of Court **MUST** send a copy of this Order to the warden of the facility in which Plaintiff is currently housed to ensure compliance with that portion of 28 U.S.C. § 1915 pertaining to the payment of the filing fee. If Plaintiff is transferred from his present place of confinement, the custodian must ensure that a copy of this Order follows Plaintiff to his new place of confinement, for continued compliance with the Order. All payments made pursuant to this Order must be submitted to the Clerk of Court for the United States District Court for the Middle District of Tennessee, 719 Church Street, Nashville, TN 37203.

---

[1] The Court may take judicial notice of the "adjudicative facts" revealed on the record of its own cases. *United States v. Doss*, 563 F.2d 265, 269 n.2 (6th Cir. 1977).

[2] While prisoners who are not granted pauper status must pay a total fee of $402—a civil filing fee of $350 plus a civil administrative fee of $52—prisoners who are granted pauper status are only liable for the $350 civil filing fee. *See* 28 U.S.C. § 1914(a)–(b) and attached District Court Miscellaneous Fee Schedule, provision 14 (eff. Dec. 1, 2020).

## II. INITIAL REVIEW

**A. Legal Standard**

The Court must conduct an initial review and dismiss the Complaint (or any portion thereof) if it is facially frivolous or malicious, if it fails to state a claim upon which relief may be granted, or if it seeks monetary relief against a defendant who is immune from such relief. 28 U.S.C. § 1915A. Review of the Complaint to determine whether it states a claim upon which relief may be granted asks whether it contains "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face," such that it would survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6). *Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). Although pro se pleadings must be liberally construed, *Erickson v. Pardus*, 551 U.S. 89, 94 (2007), the plaintiff must still "plead[] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged," *Iqbal*, 556 U.S. at 678, upon "view[ing] the complaint in the light most favorable to the plaintiff[.]" *Tackett v. M & G Polymers, USA, LLC*, 561 F.3d 478, 488 (6th Cir. 2009).

Plaintiff filed this action under § 1983, which authorizes a federal suit against any person who, "under color of state law, deprives [another] person of rights, privileges, or immunities secured by the Constitution or conferred by federal statute." *Wurzelbacher v. Jones-Kelley*, 675 F.3d 580, 583 (6th Cir. 2012) (citations omitted); 42 U.S.C. § 1983. Accordingly, the Complaint must plausibly allege: (1) a deprivation of a constitutional or other federal right, and (2) that the deprivation was caused by a "state actor." *Carl v. Muskegon Cnty.*, 763 F.3d 592, 595 (6th Cir. 2014).

3

**B. Allegations and Claims**

Plaintiff alleges that he filed multiple grievances "to Lt. Maddox and vari[ou]s [sergeants]" at the Maury County Jail on a variety of topics beginning in September 2022, and that he ultimately filed suit (Case No. 1:23-cv-00001, originally filed by Plaintiff and 20 other Jail inmates on January 9, 2023) against Maury County Sheriff Bucky Rowland. (Doc. No. 1 at 12–13.)

On February 5, 2023, Plaintiff was in a fight with another inmate and broke his hand. (*Id.* at 13.) He was seen by a nurse, but "nothing was done about [his] broken hand." (*Id.*) The next day, after Plaintiff "would not wake up during count," he was ordered to take a drug test. (*Id.* at 13–14.) When he declined to submit to the test, he was briefly segregated to a holding cell until he agreed to take the drug test, which he passed. (*Id.* at 14.) On the following day, February 7, Plaintiff's disciplinary board proceeding was held, and he was "labeled as refused" despite taking the drug test. (*Id.* at 14–15.) Plaintiff complained to Jail staff that he was unfairly charged with refusing a drug test and ultimately grieved the issue to Lt. Maddox but did not win relief. (*Id.* at 15.)

Plaintiff has requested to be seen by a dentist while at the Jail due to a persistent "throbbing pain in [his] jaw," but has been denied. (*Id.* at 15, 20.) He describes his jaw pain as "9/10 pain" that, after five months, is still ongoing and has only been treated with ibuprofen which Plaintiff buys. (*Id.* at 20–22.) After the February 5 fight, he complained to "numerous nurses" about his left "hand and tendons not working," and Nurse Vanessa told him he "was not suppose[d] to be fighting[,] that's what you get for fighting," while Nurse Tiffany told him that "it's a boxer's fracture[,] nothing can be done." (*Id.* at 15–16.) Plaintiff has requested x-rays of his hand, but Jail medical providers have repeatedly declined to order x-rays. (*Id.* at 16.) He accuses Sergeant Tilley

4

of telling the medical providers that he is a nuisance, a terrorist, and a junkie, so that the medical providers would decline to help him. (*Id.*)

On March 15, 2023, after a 48-day lockdown of the Jail, Plaintiff was moved to cell block 614 in retaliation for his numerous complaints and grievances. (*Id.*) Cell block 614 is known among Jail staff as the "trouble pod." (*Id.*) It houses ten inmates, four of whom "currently have pending civil 1983 lawsuits filed." (*Id.* at 16–17.) It is extremely hot and hard to breathe in cell block 614, as the air conditioning in that unit stopped working in July 2022, while water leaks from the ceiling and mold "grow[s] all over the walls and showers." (*Id.* at 17.) While confined in cell block 614, Plaintiff developed a painful, infected cyst under his arm that required treatment with antibiotics, and blisters on his skin for which he has been seen but not treated by medical personnel. (*Id.* at 18.) Jonathon Kinslow and Jeremiah Brewer, two other inmates housed in that unit, allegedly developed the same sores on their skin. (*Id.*) Cell block 614 only gets outdoor recreation three hours per week, weather permitting, which allegedly violates state regulations. (*Id.*) When Plaintiff grieved this lack of recreation, Sgt. Bailey and Lt. Maddox responded that he "ha[s] a skylight so technically your cell[']s a rec yard." (*Id.* at 18–19.) Cell block 614 also only has two toilets, both of which are unclean and leak waste on the floor where water from overflowed shower drains also leaks. (*Id.* at 19.) Finally, Plaintiff is denied local newspapers in cell block 614. (*Id.*)

Plaintiff claims that he is confined in the filthy and otherwise untenable conditions of cell block 614, where his requests for treatment of his hand and dental pain continue to be denied, in retaliation for his filing of grievances and a lawsuit. (*Id.* at 20–21.) He seeks an award of damages against Sheriff Rowland, Lt. Maddox, Sgt. Tilley, and Nurse Vanessa. (*Id.* at 2–3, 22–23.)

5

## C. Analysis

Plaintiff asserts two primary claims: inadequate medical care and retaliation. The Court addresses these claims in turn.

As a pretrial detainee, Plaintiff has a Fourteenth Amendment right to be free from deliberate indifference to serious medical needs. *See Hyman v. Lewis*, 27 F. 4th 1233, 1237 (6th Cir. 2022). To state a claim for a violation of this right, Plaintiff must allege that: (1) he had a sufficiently serious medical need; and (2) a defendant "acted deliberately (not accidentally), [and] also recklessly in the face of an unjustifiably high risk of harm that is either known or so obvious that it should be known." *Helphenstine v. Lewis Cnty., Ky.*, 60 F. 4th 305, 317 (6th Cir. 2023) (internal citations and quotation marks omitted). For purposes of initial review, Plaintiff's allegation that Nurse Vanessa dismissed his concern over the need for further diagnostic workup of the "boxer's fracture" in his hand—despite his report that he suffered not just pain but loss of function in his "hand and tendons" as a result of the injury (Doc. No. 1 at 15, 22)—is sufficient to support a colorable claim of deliberate indifference to serious medical needs. His allegation concerning failure to provide dental care despite "5 months [of] throbbing 9/10 pain" in his jaw that is "ongoing" (*id.* at 22) also supports a sufficiently serious medical need, though he does not identify a defendant whose recklessness is to blame for that denial of obviously needed treatment. At this early stage, Plaintiff's medical care claim will be allowed to proceed for further development against Nurse Vanessa. That claim will also be allowed to proceed against Sgt. Tilley, to whom Plaintiff complained about severe pain from his hand injury (*id.* at 13–14), but who then sought to undermine the credibility of Plaintiff's report of symptoms to Jail medical staff by, e.g., labeling him a junkie in order to interfere with his treatment. (*Id.* at 16.)

To state a claim for retaliation in violation of the First Amendment, Plaintiff must allege "that 1) he engaged in protected conduct, 2) the defendant took an adverse action that would deter a person of ordinary firmness from continuing to engage in that conduct, and 3) the adverse action was taken at least in part because of the exercise of the protected conduct." *Siggers-El v. Barlow*, 412 F.3d 693, 699 (6th Cir. 2005) (citing *Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999)). For purposes of initial review, Plaintiff has adequately alleged that he engaged in protected conduct by filing nonfrivolous grievances and a federal lawsuit against Sheriff Rowland, Lt. Maddox, and other officials. *See Bell v. Johnson*, 308 F.3d 594, 607 (6th Cir. 2002) ("[P]rotected conduct, for the purposes of a First Amendment retaliation claim, encompasses a prisoner's efforts to access the courts in . . . civil rights claims."); *Gennoe v. Washburn*, No. 3:19-cv-00478, 2019 WL 5693929, at *6 (M.D. Tenn. Nov. 4, 2019) ("The filing of a non-frivolous grievance is protected conduct[.]") (citing *Herron v. Harrison*, 203 F.3d 410, 415 (6th Cir. 2000)). He has also plausibly established the second and third elements of a First Amendment retaliation claim by alleging that, in the wake of his protected conduct (and after a period of Jail lockdown), he was abruptly transferred to cell block 614 where he was denied sufficient outdoor recreation and exposed to uncomfortable, unsanitary, and infection-producing conditions. *See Thaddeus-X*, 175 F.3d at 398–99 (finding that plaintiff made sufficient showing to survive summary judgment on retaliation claim, based on evidence of "[h]arassment . . . and transfer to the area of the prison" where "unpleasant and unhealthy conditions . . . obtain," timed shortly after plaintiff filed his own grievances and helped another inmate file suit concerning prison conditions).

Though the Complaint does not name a particular defendant who took any discrete retaliatory action against Plaintiff, it identifies Lt. Maddox as the Jail's "Head of Operations" (Doc. No. 1 at 2) to whom Plaintiff's grievances were directed, and as one of the officers who dismissed

7

Plaintiff's complaint about insufficient outdoor recreation in cell block 614. Notably, in Case No. 1:23-cv-00001, Lt. Maddox was alleged to be the official who moved Plaintiff to cell block 614, and one of the officials who allowed the harsh conditions of that cell block to persist. (*See* Case No. 1:23-cv-00001, Doc. No. 13 at 19, 21.) The Complaint's allegations are also sufficient to support a plausible claim that, as a matter of custom or policy at the Jail, inmates who cause "trouble" at the Jail are transferred to cell block 614 in retaliation. Accordingly, Plaintiff's First Amendment retaliation claim will be allowed to proceed against Defendants Maddox and Rowland (who, as Maury County Sheriff, is presumed to be a policymaker at the Jail).

### III. APPOINTMENT OF COUNSEL

Appointment of counsel for an indigent plaintiff in a civil action is "justified only in exceptional circumstances." *Miles v. Michigan Dep't of Corr.*, No. 19-2218, 2020 WL 6121438, at *4 (6th Cir. Aug. 20, 2020) (citing *Lanier v. Bryant*, 332 F.3d 999, 1006 (6th Cir. 2003), and *Lavado v. Keohane*, 992 F.2d 601, 606–07 (6th Cir. 1993)). Whether to appoint counsel in such a case is a matter within the discretion of the district court, considering the type of case presented and the ability of the plaintiff to represent himself. *Lavado*, 992 F.2d at 604, 606. In view of what appear to be serious allegations of deliberate indifference to medical needs and retaliatory confinement in disturbing, unhealthy conditions, the Court finds that this case presents exceptional circumstances justifying appointment of counsel.

### IV. FURTHER ACTION

Accordingly, the Court finds that the Complaint states colorable claims of deliberate indifference to serious medical needs and retaliation. The Court further finds that appointment of counsel is justified in this case, and therefore will not at this time order that process issue to any Defendant.

The Clerk of Court is **DIRECTED** to appoint counsel for Plaintiff from the Civil Appointments Panel and notify the Court when counsel has been appointed.

This action is **REFERRED** to the Magistrate Judge for customized case management in accordance with Local Rule 16.01 and 28 U.S.C. § 636(b)(1)(A).

It is so **ORDERED**.

_____
WILLIAM L. CAMPBELL, JR.
UNITED STATES DISTRICT JUDGE